ROBERT WAGGENER - SBN: 118450
LAW OFFICE OF ROBERT WAGGENER
214 Duboce Avenue
San Francisco, California 94103
Phone:          (415) 431-4500
Fax:            (415) 255-8631
E-Mail:         rwlaw@mindspring.com

Attorney for Defendant ALBERTO TORRES

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA | No.  CR14 00120 EMC |
| Plaintiff, | **DEFENDANT ALBERTO TORRES'** **SENTENCING MEMORANDUM AND** |
| v. | **MOTION FOR DOWNWARD VARIANCE** |
| ALBERTO TORRES, | Date:   July 21, 2015 |
| Defendant. | Time:  10:00 a.m. |
| | Crtrm: 5 (Honorable Edward M. Chen) |

## INTRODUCTION

Apologies are extended for the tardy filing of this sentencing memorandum on behalf of defendant Alberto Torres.  The reason for the delay is that counsel is traveling internationally and has encountered computer and internet problems along the journey

Thirty-four year old defendant Alberto Torres appears before this Court for sentencing after entering guilty pleas to counts One, Three, Four, Eight and Nine of the Superseding Indictment.  The government, the defendant and probation all  agree that a departure and variance from the sentencing guidelines to a sentence of 168 months (14 years) is the just and appropriate sentence, particularly given the package deal including eight other defendants.  Counsel joins in the arguments presented by the package co-defendants and the government in their various sentencing memoranda as to the benefits of the linked plea agreements as a basis for a variance or downward departure from the otherwise applicable guideline ranges.

The final Presentence Report (PSR) was prepared by United States Probation Officer Trevor L. Lilian.  There is no objection to the body of the PSR, but some objection is made to some of the characterizations of Mr.Torres in the sentencing recommendation commentary by Mr. Lilian, understanding that the recommendation language is not normally passed on to the Bureau of Prisons.  There is no dispute by the parties as to guideline calculations.  The PSR and the Plea Agreement contemplate a Total Adjusted Offense Level of 34, based on the defendant's status as a career offender. PSR ¶¶ 88, 91. Although somewhat buried in the sentencing recommendation, there is also no objection to a one level CHC departure for Mr. Torres to a level V based on USSG §§4A1.2(a)(1) and 4A1.3(b)(3). As recognized by the government in their sentencing memorandum (Dkt. No. 485, page 2), the parties get there by a slightly different path but everybody arrives at the same recommendation of 168 months of imprisonment.

## I.

### FACTUAL BACKGROUND OF THE CASE AND CRIMINAL CONDUCT OF ALBERTO TORRES

The specific gang conduct of Mr Torres is discussed at paragraphs 49-58 of the PSR. Mr. Torres joined the gang approximately 18 years ago at the age of 16 and was in that mix throughout his adult years, although a great deal of that time was spent in custody based on his raging drug addiction and a series of state drug convictions. The criminal history of Mr. Torres summarized in paragraphs 98 to 120 reveal that he has no prior convictions for crimes of violence. The most serious criminal gang activity for Mr. Torres is his participation in the so-called pizza parlor assault in 2013 (PSR ¶¶ 56, 57). There is no evidence of direct participation of Mr. Torres in a homicide, or of Mr. Torres personally carrying a firearm. Mr. Torres was involved in one shooting incident in 2004 when another gang member fired a weapon from a vehicle at rival gang members (PSR ¶ 53). Mr. Torres was convicted of a state court resisting arrest misdemeanor for that conduct (PSR ¶ 100). These gang activities are certainly quite serious, but it is submitted that the 14 year recommended sentence for Mr. Torres is sufficient punishment for Mr. Torres for his conduct. When he eventually gets out of prison he will be a couple years shy of his 50th birthday.

1      Without question the defendant technically qualifies as a career offender as a result of his

2  multiple controlled substance offenses (PSR ¶ 88).  It is to be noted, however, that each of the

3  qualifying felony controlled substance offenses involved small chunks of crack cocaine

4  possessed for sale or sold to an undercover police officer (PSR, ¶¶ 99, 101, 103), with the most

5  recent conviction in April 2007 involving the sale of $20.00 worth of crack cocaine to an

6  undercover police officer (PSR, ¶ 103). The point is that Mr. Torres' deserved status as a career

7  criminal is the result of small time drug dealing, consistent with Mr. Torres feeding his own drug

8  addiction, rather than a person of a person with a violent past or at the upper echelons of the drug

9  trade.

10                                               **II.**

11              **BACKGROUND AND PERSONAL HISTORY OF ALBERTO TORRES**

12      The personal and family data of Mr. Torres is summarized in paragraphs 123 through 127

13  of the PSR (page 25), followed by a summary of his physical condition and mental and emotional

14  health (¶¶ 128-131, page 24).  Mr. Torres was born here in California and then moved to Mexico

15  with his mother and grandmother at the age of five with the break up of his parents' marriage.

16  Suffering economically and unable to afford any schooling, his mother sent him back to live with

17  his father in the Mission District of San Francisco when Alberto was thirteen. His father had

18  moved on with a new relationship and the stepmother did not approve of Alberto, and he was

19  basically abandoned and left to fend for himself. He did not have any family or other support, and

20  by 16 he was raising himself. Before being kicked out of high school he was using cocaine and

21  heroin and was jumped into the gang. A long cycle of drug addiction and incarceration followed,

22  bringing him up to the present tragic circumstances. One shining light is the birth of his son who

23  is now two years old. Mr. Torres was spending all the time he could with his child before being

24  taken in to custody on the present charges and he has persistently tried to maintain a level of

25  contact from inside his jail cell.

26      This personal history is aptly summarized in a portion of the sentencing recommendation

27  in the PSR:

28

**DEFENDANT TORRES' SENTENCING MEMORANDUM**      -3-

In assessing the defendant's history, he comes from a difficult background involving an unstable childhood that included growing up in a neighborhood plagued by gangs and the violence they caused. In addition, Torres was raised in Mexico during his early youth before returning to San Francisco. By age 16, the defendant stated he lacked any family support and was raising himself.

The defendant was jumped into the 19th Street Sureños gang around that same time frame. These challenging circumstances are not conducive for entering adulthood as a law abiding individual. Not surprisingly, the defendant was influenced by gang affiliation and has placed himself in dangerous situations such as the instant offense. Torres has not been able to find his way as an adult, even after opportunities of community supervision and long periods of incarceration. He desperately needs to isolate himself with positive influences and obtain specialized training to secure a career. Torres is articulate and certainly capable of being a role model to his child.

**III.**

**PRESENTENCE REPORT AND SENTENCING RECOMMENDATION**

While sympathetically taking a lot of factual and historical information regarding Mr.

Torres into account, and agreeing that a substantial guideline variance is warranted, the probation

officer nonetheless goes out of his way to demonize the defendant as a menace to society.

Various statements within the sentencing memorandum include:

In addition, the defendant engaged in gun-related violence in furtherance of the gang's activities and helped fellow gang members assault and rob suspected gang rivals. The defendant was also present during a shooting.

Indeed, Torres has an extensive history involving guns, violence and drug trafficking dating back to 1999. Based on the facts in the record, the frequency and aggressiveness of his terrorizing conduct appears to be increasing, with two of the most violent acts occurring just prior to his arrest, including a robbery with a knife in 2013. He has relentlessly committed violent acts that have caused severe harm to numerous victims and the community.

Although the defendant's substance abuse issues are acknowledged, it is far outweighed by the level of violence he has been a part of and the need for public safety. The defendant is convicted of several violent and harmful acts. Each one of these acts taken alone is egregious.

Nonetheless, Torres' apprehension is best described as the culmination of a violent and unabated criminal rampage. He and his gang were constantly involved in robberies, and attacking and trying to kill rival gang members.

Defendant submits that this menacingly violent characterization is inappropriate, overly

rhetorical, and not substantiated by the record. Mr. Torres is a drug addict and the vast majority

of his problems derive from his drug addiction. Furthermore, most of Mr. Torres' adult years

have been spent in jail or prison because of his drug addiction and he has not been out on the

1   streets terrorizing people. Mr. Torres does not deny his gang involvement, his reckless and stupid

2   behavior, and all the egregious conduct he has admitted to in his Plea Agreement, but the

3   probation officer's summarizing characterizations are over the top. Mr. Torres has not

4   relentlessly committed violent acts, he has not been directly involved in gun related violence, he

5   has not been convicted of several violent and harmful acts, and he has not been involved in a

6   violent and unabated criminal rampage. The shooting he was involved in took place in 2004

7   where Mr. Torres was a passenger in a car and he eventually was convicted of a misdemeanor

8   resisting charge. Mr. Torres has admitted in his Plea Agreement that he at some time committed

9   robberies in gang territory at knife point, but he was never prosecuted for two incidents that are

10  mentioned and summarized from police reports in the PSR at paragraphs 119 and 120, and he

11  never had a chance to defend himself and dispute the police report information. The overly

12  violent references to Mr. Torres are simply not a fair characterization of his history.

13          It is recognized that the text and substance of the PSR is not normally delivered to the

14  Bureau of Prisons for its classification and assessment purposes, but it would be part of the

15  probation file that would be used to monitor and make decisions about Mr. Torres once he

16  eventually makes it to supervised release. For that reason it is requested that the various

17  inflammatory and unsubstantiated statements set out above from the sentencing recommendation

18  of the PSR be stricken.

19                                            **IV.**

20          **THE PERSONAL BACKGROUND OF MR. TORRES AND ANALYSIS
        PURSUANT TO 18 U.S.C. § 3553(a)**

21

22          The primary directive in § 3553(a) is that the court must impose a sentence that is

23  "sufficient, but not greater than necessary, to comply with" the purposes of sentencing. *See*, 18

24  U.S.C. § 3553(a) Those purposes include the need:  (1) to provide just punishment; (2) to create

25  adequate deterrence; (3) to protect the public; and (4) to provide the defendant necessary

26  treatment and training.  18 U.S.C. § 3553(a)(2).

27          The Court is clearly aware that Mr. Torres' plea was the result of a group disposition,

28  settling the cases of a large group of gang members charged in the case, and the personal

**DEFENDANT TORRES' SENTENCING MEMORANDUM**     -5-

background of Mr. Torres has been summarized above.  For all the reasons stated herein and supported by the accompanying sentencing memoranda for the other defendants, a fourteen year sentence for Mr. Torres is absolutely sufficient to comply with the purposes of sentencing set out in the guidelines.

**V.**

**REQUESTED RECOMMENDATIONS BY THE COURT**

It is requested that the Court recommend that Mr. Torres be housed in the northern California by the Bureau of Prisons and that he be allowed to participate in the RDAP program while in custody.  Consistent with the recommendation of the PSR, it is also requested that Mr. Torres not be ordered to pay a fine based on his financial circumstances.

**CONCLUSION**

For the foregoing reasons, Defendant requests this Court to impose the recommended sentence.

Dated: July 15, 2015                          Respectfully submitted,


                                              _____
                                                         /s/
                                              ROBERT WAGGENER
                                              Attorney for Defendant
                                              ALBERTO TORRES